## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **STEPHANIE BROWN**, individually, and on behalf of others similarly situated, | : Case No: |
| : | |
| Plaintiff, | : Hon. |
| : | |
| v. | : Mag. |
| : | |
| **THE CITY OF NEW YORK**, | : |
| : | |
| Defendant. | : |

## COLLECTIVE/CLASS ACTION COMPLAINT

Plaintiff, Stephanie Brown ("Plaintiff"), hereby brings this Collective/Class Action Complaint against Defendant, City of New York ("Defendant"), and states as follows:

### INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the New York Minimum Wage Act ("NYMWA"), §§ 650, *et seq.*, the New York Payment of Wages Act ("NYPOW"), §§ 190, *et seq.*, and 12 N.Y.C.R.R. §§ 142, *et seq.* ("NYCRR").

2.      According to The Official Website of the City of New York, NYC311 "provide[s] [] access to non-emergency City services and information about City government programs" 24 hours a day, 7 days a week, and 365 days a year.[1] "NYC311 [] help[s] with a broad range of services, including things like homeless person assistance, pothole repair, or help understanding

---

[1] *See* https://portal.311.nyc.gov/article/?kanumber=KA-02498#:~:text=NYC311%20can%20provide%20you%20access,understanding%20a%20property%20tax%20bill. (last visited Sept. 18, 2023).

a property tax bill." *Id*. The public accesses NYC311 by calling "311", texting the City at "311-692", or using the City's NYC311 App and online platforms such as NYC311 Online, Twitter, Facebook, Instagram, and Skype. *Id*.

3.      In providing the aforementioned services, Defendant employed customer service representatives in its New York brick and mortar call centers. Defendant used a number of titles, including, but not limited to, Call Center Representative, Associate Call Center Representative, and 311 Dispatcher, to refer to its customer service representatives (collectively referred to herein as "CSRs").

4.      Defendant classified its CSRs as non-exempt and tasked them with the primary job duty of providing over-the-phone customer service.

5.      Defendant employed Plaintiff as an hourly call center employee with the job title of CSR.

6.      The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's hourly call center employees, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[2]

7.      One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

8.      More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to

---

[2] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf (last visited Sept. 18, 2023).

download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

9.      Defendant violated the FLSA and common law by systematically failing to compensate its CSRs for work tasks completed before and after their scheduled shifts when they were not logged into Defendant's timekeeping system, which resulted in CSRs not being paid for all overtime hours worked, overtime gap time when associated with unpaid overtime, and regular hours in non-overtime workweeks.

10.     More specifically, Defendant failed to compensate CSRs for the substantial time they spent turning on and booting up their computer and computer systems prior to clocking in to Defendant's timekeeping system, and shutting down/logging out of various computer programs and software after they clocked out at the end of each day.

11.     Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding her unpaid back wages, liquidated damages, attorneys' fees and costs to make her and the putative Collective and Class whole for damages they suffered, and any other remedies to which they may be entitled, and to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

12.     At the earliest time possible, Plaintiff will request that the Court authorize notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employees who worked for Defendant at any time in the past three years.

## JURISDICTION AND VENUE

13.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claim, pursuant to 28 U.S.C. § 1331, because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

14.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

15.     Defendant's annual sales exceed $500,000, and Defendant employs more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Defendant's CSRs engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

16.     This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367 because they originate from the same facts that form the basis of her federal claims.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claim occurred in this District and Defendant conducts business in this District.

## PARTIES

18.     Plaintiff Stephanie Brown is a resident of Brooklyn, New York and worked for Defendant in its Maiden Lane brick and mortar call center as a non-exempt CSR from approximately July 2021 through May 2022. Defendant compensated Plaintiff through the payment of an hourly rate, most recently $18.00 per hour. Plaintiff Brown signed a consent to join this collective action, which is attached as **Exhibit A**.

19.     Additional Opt-In Plaintiffs were or are employed by Defendant as CSRs during the past three years and their consent forms will also be filed in this case.

20.     Defendant City of New York is a municipal corporation duly organized and existing under the Constitution and laws of the State and City of New York as a judicial entity amenable to suit under the FLSA. At all relevant times, the City of New York was and has been a public agency within the meaning of Section 3(x) of the FLSA, 29 U.S.C. § 203(x).

## GENERAL ALLEGATIONS

21.      Prior to hiring prospective CSRs, Defendant provided them with a written offer setting forth the job requirements and rate of pay.

22.      Defendant maintained documents demonstrating the promised hourly wage for each CSR including, but not limited to: offer letters, paystubs, and/or other payroll records.

23.     Plaintiff received an offer from Defendant to work as a CSR, and she accepted Defendant's offer with the understanding that her base hourly rate would be paid for all hours worked.

24.     Plaintiff performed under the contract with Defendant by carrying out her job duties and responsibilities. More specifically, Plaintiff acted as a point of contact for all non-emergency City of New York services by responding to 3-1-1 phone inquiries from the public, providing customer service and information to callers, and taking complaints and service requests and forwarding them for further action. To provide the aforementioned customer service, Plaintiff utilized Defendant's applications and systems to track all events and customer service information. Plaintiff additionally performed the required unpaid off-the-clock work explained below.

25.      Defendant paid its CSRs at varying hourly rates.

26.    Defendant's CSRs, including Plaintiff, typically worked five days each week and up to, and on occasion more than, forty (40) hours per week.

27.    Defendant provided training to hourly call center employees, on, *inter alia*, how to carry out their day-to-day job duties, how to track their time, how to load and log into their computer programs at the beginning of the day and how to log out at the end of the day; attendance, schedule and call quality expectations; and Defendant's policies. The training that Defendant provided to all of its CSR was substantially, if not entirely, the same.

28.    At all relevant times, Defendant controlled Plaintiff's and all other CSRs' work schedules, duties, protocols, applications, assignments, and employment conditions.

29.    Defendant required Plaintiff and all other CSRs to use a computer and a variety of essential and indispensable computer programs, applications, and servers in order to perform their job duties.

30.    Defendant instructed Plaintiff and other similarly situated CSRs to be "call ready" the moment their scheduled shifts started but prohibited them from clocking in before the start of their scheduled shifts. This required Defendant's CSRs to log into and load all of their essential work-related computer programs and applications prior to the start of their shifts so they could be prepared to take calls the moment their shifts began. During the boot-up and login process, Defendant's CSRs often experienced technical difficulties, increasing the amount of off-the-clock work they performed that day.

31.    Defendant enforced this policy through its uniform compensation, attendance, and adherence procedures and the call quality assurance system it used to monitor and grade CSRs' calls. For example, Defendant routinely evaluated, and at times disciplined, CSRs based on schedule adherence and call quality metrics, including, but not limited to, the amount of time a

CSR was clocked in but unavailable to take calls. Further, Defendant assessed and evaluated its CSRs' handling of calls and their recitation of information outlined on Defendant's scripts.

32.    Defendant's CSRs used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and indispensable part of the CSRs' work and CSRs could not perform their jobs without them.

33.    Similarly, Defendant trained and instructed its CSRs to clock out the moment they finished fielding their last call for the shift. This pressured and required Defendant's CSRs, including Plaintiff, to also perform off-the-clock work at the end of their scheduled shifts when they logged out of the programs and applications that they utilized during their shifts and shutdown or restarted their computer.

34.    Defendant's Code of Conduct explicitly provides that "[e]mployees must obey all rules, regulations, and direct orders given to them by their supervisors[,]" which, coupled with the above noted policies and procedures, required the off-the-clock work described herein.

35.    The pre- and post-shift off-the-clock time Plaintiff and Defendant's CSRs spent booting-up/logging into and shutting down their computer, applications and programs directly benefitted Defendant and was integral and indispensable to the CSRs' job responsibilities.

36.    As a result of the pre- and post-shift off-the-clock work described herein, Plaintiff and other CSRs were unlawfully deprived of approximately twenty (20) to forty (40) minutes of compensation every shift.

37.    At all relevant times, Defendant was able to track the amount of time Plaintiff and other CSRs spent in connection with the pre- and post-shift activities; however, Defendant failed to do so and failed to compensate them for the off-the-clock work they performed, thus

breaching its agreements with Plaintiff and its CSRs.

38.    Indeed, in light of the explicit and long-standing DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

39.    Despite knowing Plaintiff and all other CSRs performed this pre- and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

40.    Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and similarly situated CSRs booted-up and logged into their computer each shift, along with their clock in and out times in the timekeeping system.

41.    Upon information and belief, Defendant also possesses, controls, and/or has access to information and electronic data indicating when Plaintiff and other CSRs experienced technical issues.

42.    Because Defendant required its CSRs, including Plaintiff, to perform pre- and post-shift work off-the-clock, and prohibited them from including all pre-shift hours worked in their clock in times recorded, including overtime hours, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time the employees spent working for Defendant. Thus, the hours reflected on the CSRs' paystubs are also inaccurate representations of the hours they actually worked.

**A.  Pre-Shift Off-the-Clock Work**

43.    The off-the-clock pre-shift process took substantial time, approximately fifteen (15) to thirty (30) minutes per shift. Specifically, before each shift CSRs had to undertake the following essential work tasks:

      a.  Turn on their computer;

b.  Log into Microsoft Windows using a username and password;

c.  Open Defendant's application for receiving caller information;

d.  Set up and prepare their headphones for incoming calls;

e.  Log into Defendant's timekeeping system;

f.  Turn on their second computer screen;

g.  Open Microsoft Outlook, Defendant's application for receiving emails related to their job, coaching she had to attend and other information;

h.  Open Defendant's scheduling application through which Defendant's CSRs would monitor their lunch/break times;

i.  Open Defendant's application containing scripts CSRs had to read when fielding calls; and

j.  Go into a "ready" status at the start of the scheduled shift and clock in.

44.    Defendant's employees had to complete this process before the start of their scheduled shifts and before fielding calls. Consequently, the CSRs had to arrive to begin working at least fifteen (15) to thirty (30) minutes before their scheduled shifts to complete their above-described start-up and log-in activities.

45.    Defendant's CSRs were not compensated for all of this time because Defendant prohibited them from clocking in before the start of their scheduled shifts.

46.    The pre-shift off-the-clock work CSRs performed directly benefitted Defendant, and was integral and indispensable to their job duties and responsibilities.

**B. Post-Shift Off-the-Clock Work**

47.    Pursuant to Defendant's policies, training and direction, Plaintiff and similarly situated CSRs were required to clock out the moment they were done fielding their last call for the day and *before* closing all work applications and systems they used during their shift and

shutting down or restarting their computer. Plaintiff and other CSRs were not allowed to begin the logout and shutdown process until they completed their last fielded call.

48.     This resulted in plaintiff and other CSRs performing an additional five (5) to ten (10) minutes every shift.

49.     The post-shift off-the-clock work Plaintiff and other CSRs performed was compensable, directly benefitted Defendant and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to their job duties and responsibilities.

### C.  The Off-the-Clock Work Results in Viable "Gap Time" Claims

50.     Gap time" claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Kinkead v. Humana at Home, Inc.*, 450 F.Supp.3d 162, 182 (D. Conn. Mar. 31, 2020); *see also Conner v. Cleveland Cty., N.C.*, 22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA").

51.     Plaintiff and all similarly situated CSRs regularly worked non-overtime hours (i.e. "gap time") for which they were not paid.

52.      During the weeks that CSRs did not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices was a deprivation of straight-time wages, in breach of Defendant's agreements with them.

### D.  Plaintiff's Exemplary Workweek

53.      The FLSA and regular wage violations discussed herein occurred throughout Plaintiff's employment with Defendant; however, as an example of one instance where Defendant failed to pay Plaintiff overtime for hours worked in excess of forty (40) hours (as

mandated by the FLSA), Plaintiff identifies the pay period for which she was paid on September 3, 2021. With pre-and post-shift off-the-clock work, Plaintiff should have been paid an additional twenty (20) minutes or more at her overtime rate of approximately $27.00 for each hour worked in excess of forty (40) in the overtime workweek.

## COLLECTIVE ACTION ALLEGATIONS

54.    Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of herself and on behalf of:

> *All current and former hourly CSRs who worked for Defendant at any time during the three years preceding the date of an order from this Court granting conditional certification up through and including judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

55.    Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

56.    Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

57.    Consistent with Defendant's policies and practices, Plaintiff and the proposed FLSA Collective were not paid for all regular and/or premium overtime compensation in workweeks during which they worked beyond forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

58.    All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiff and the

proposed FLSA Collective performed.

59.    Defendant was aware, or should have been aware, that federal law required it to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

60.    As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

      a. Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for all regular hours they worked off-the-clock in non-overtime workweeks;

      b. Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for all overtime gap time and premium overtime wages for hours they worked off-the-clock in excess of forty (40) hours per workweek; and

      c. Willfully failing to record all of the time that its employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant.

61.    Defendant's unlawful conduct was (and is) widespread, repeated, and consistent.

62.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

63.    The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key

issues are the same for every proposed FLSA Collective member, to wit: whether the FLSA Collective members are: (1) required to work uncompensated boot up and log out time; and (2) entitled to their regular hourly wage, including a shift differential where applicable, in non-overtime workweeks, overtime gap time in applicable weeks and overtime for hours worked over forty (40) in a week.

64.     Plaintiff estimates the FLSA Collective, including both current and former CSRs over the relevant period, includes hundreds, if not thousands, of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

65.     The FLSA Collective should be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

### RULE 23 NEW YORK STATE LAW CLASS ACTION ALLEGATIONS

66.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former hourly CSRs who worked for Defendant in New York during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 New York Class"). Plaintiff reserves the right to amend this definition if necessary.

67.     The members of the Rule 23 New York Class are so numerous that joinder of all Rule 23 New York Class members in this case would be impractical. Plaintiff reasonably estimates there are thousands of Rule 23 New York Class members. Rule 23 New York Class members should be easy to identify from Defendant's computer systems and electronic payroll

and personnel records.

68.     There is a well-defined community of interests among Rule 23 New York Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 New York Class. These common legal and factual questions, include, but are not limited to, the following:

      a.  Whether Defendant failed to keep accurate time and payroll records for Plaintiff and the Rule 23 New York Class;

      b.  Whether the pre-shift time Rule 23 New York Class members spent on startup and login activities each session before clocking in for each shift is compensable;

      c.  Whether the post-shift time Rule 23 New York Class members spent closing all programs, applications and networks after clocking out is compensable;

      d.  Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 New York Class member regular wages or minimum wage for each non-overtime hour worked;

      e.  Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 New York Class member overtime compensation for each overtime hour worked; and

      f.  Whether Defendant should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating the state laws and wage acts applicable to the members of the Rule 23 New York Class.

69.     Plaintiff's claims are typical of those of the Rule 23 New York Class in that she and all other Rule 23 New York Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 New York Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 New York Class members.

70.     Plaintiff will fully and adequately protect the interests of the Rule 23 New York

Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 New York Class.

71.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 New York Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

72.    This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

73.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

74.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 New York Class and declaratory relief is appropriate in this case with respect to the Rule 23 New York Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**FLSA COLLECTIVE ACTION**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq.* -- FAILURE TO PAY OVERTIME**

75.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

76.    At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq.*

77.     At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

78.     At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

79.     At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

80.     Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

81.     Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

82.     The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

83.     The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq.*

84.     At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and all the proposed FLSA Collective members to perform pre- and post-shift work off the clock, every shift, and failed to pay these employees their regular hourly rate for all hours worked in non-overtime workweeks, overtime gap time in weeks where it occurred, and the federally mandated overtime compensation for all work performed over forty

(40) hours per week.

85.    The off-the-clock work performed every shift by Plaintiff and the proposed FLSA Collective was an essential part of their jobs and these activities and the time associated with these activities was significant.

86.    In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, all of this overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including shift differential where applicable. 29 U.S.C. § 207. Further, all "gap time" should have been paid at Plaintiff and the FLSA Collective's regular hourly rate.

87.    As a result of Defendant's unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of both straight time and overtime wages in violation of the FLSA.

88.    Defendant's violations of the FLSA were knowing and willful. Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities, but did not.

89.    As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against Defendant including unpaid wages (including unpaid overtime), an additional equal amount in liquidated damages (double damages), reasonable attorneys' fees and costs, interest, and all other relief just and appropriate under the circumstances.

**COUNT II**
**RULE 23 NEW YORK CLASS ACTION**
**VIOLATIONS OF THE NEW YORK MINIMUM WAGE ACT ("NWMWA") §§ 650, *et seq.*, the NEW YORK PAYMENT OF WAGES ACT ("NYPOW") §§ 190, *et seq.*, and 12 N.Y.C.R.R. §§ 142, *et seq.* – ("NEW YORK LABOR LAWS") – FAILURE TO PAY MINIMUM AND OVERTIME WAGES AND FAILURE TO MAINTAIN AND**

## PRESERVE WAGE RECORDS

90.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

91.     At all times relevant to the action, Defendant was an employer covered by the overtime mandates of the NYMWA and the NYPOW, and Plaintiff and the Rule 23 New York Class were employees entitled to the NYMWA and the NYPOW's protections.

92.     The NYMWA requires employers to pay their employees minimum wages "for each hour worked…" *See* N.Y. Labor Law §§ 190 *et seq*., N.Y. Labor Law § 652, and the Wage Orders issued under 12 N.Y.C.R.R. § 142.

93.     The NYMWA entitles employees to compensation for every hour worked in a workweek. 12 NYCRR § 142-2.1.

94.     Defendant violated the NYMWA by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 New York Class at a rate that was at least equal to the applicable New York State minimum wage for all regular hours they worked off-the-clock in non-overtime workweeks and for all overtime gap time.

95.     Defendant also violated the NYWA by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 New York Class their overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. N.Y. Lab. Law §§ 650 *et seq*.; 12 NYCRR § 142-2.2.

96.     The NYPOW and 12 N.Y.C.R.R. § 142-2.6 require employers to establish, maintain and preserve true and accurate records of all hours worked.

97.     Defendant violated the NYPOW and 12 N.Y.C.R.R. § 142-2.6 by failing to establish, maintain, and preserve true and accurate records of all hours Plaintiff and the Rule 23 New York Class worked for the benefit of Defendant, as discussed herein.

98.     The NYMWA entitles employees who have not been paid in accordance with the NYMWA to bring a civil action to recover all unpaid amounts, liquidated damages, interest, costs, and reasonable attorneys' fees. N.Y. Labor Law § 663(1).

99.     The NYPOW entitles employees to bring a private action against an employer "to recover full wages, benefits and wage supplements and liquidated damages accrued during the six years previous to the commencing of such action." N.Y. Labor Law § 198(3) ("Investigation by the commissioner shall not be a prerequisite to nor a bar against a person bringing a civil action under this section.")

100.    New York's Wage Theft Prevention Act (and previously the Unpaid Wages Prohibition Act), NY CLS Labor §§ 191, *et seq.* ("New York Labor Law") provides that employees "shall be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer." N.Y. Labor Law § 191(d).

101.    N.Y. Labor Law § 198 allows an employee who has not been paid in accordance with New York's Wage Theft Prevention Act to bring a civil action to recover all unpaid amounts, liquidated damages, interest, costs, and reasonable attorneys' fees.

102.    Defendant's uniform policies and practices, as described above, were (and are) willful, intentional, unreasonable, arbitrary, and in bad faith.

103.    As a result, the Rule 23 New York Class have and will continue to suffer loss of income and other damages. Accordingly, the Rule 23 New York Class is entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the NYMWA and NWPOW at an amount to be proven at trial.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests the following relief:

a.      An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.      An Order certifying this action as a class action (for the Rule 23 New York Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's New York state law claims (Count II);

c.      An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed FLSA Collective members and Rule 23 New York Class, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

d.      An Order designating the Plaintiff as representative of the FLSA Collective and the Rule 23 New York Class, and undersigned counsel as Class counsel for the same;

e.      An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f.      An Order declaring Defendant's violations of the FLSA were willful;

g.      An Order declaring Defendant violated New York state law for failing to pay Plaintiff and the Rule 23 New York Class the minimum wage and overtime compensation to which they were entitled;

h.      An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective and the the Rule 23 New York Class the full amount of damages and liquidated damages available by law;

i.      An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as provided by statute;

j.      An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

k.      An Order awarding such other and further relief as this Court deems appropriate.

Dated: September 18, 2023                    Respectfully Submitted,

*/s/* Jason T. Brown
Jason T. Brown
BROWN, LLC
111 Town Square Place, Suite 400
Jersey City, NJ 07310
Telephone: (877) 561-0000
jtb@jtblawgroup.com

Kevin J. Stoops (*pro hac vice* forthcoming)
Alana Karbal (*pro hac vice* forthcoming)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
kstoops@sommerspc.com
akarbal@sommerspc.com

*Attorneys for Plaintiffs and the Putative*
*Class/Collective Action Members*

## JURY DEMAND

Plaintiff, Stephanie Brown, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: September 18, 2023          Respectfully Submitted,

*/s/* Jason T. Brown
Jason T. Brown
BROWN, LLC
111 Town Square Place, Suite 400
Jersey City, NJ 07310
Telephone: (877) 561-0000
jtb@jtblawgroup.com

Kevin J. Stoops (*pro hac vice* forthcoming)
Alana Karbal (*pro hac vice* forthcoming)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300

21

kstoops@sommerspc.com
akarbal@sommerspc.com

*Attorneys for Plaintiffs and the Putative*
*Class/Collective Action Members*